IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

EMMANUEL FERNÁNDEZ JORGE and
CARMEN LIDIA JORGE,

Plaintiffs

v.

SERGEANT JULIO GALARZA-SOTO
and JUAN CARLOS ORTIZ-CRUZ,

Defendants.

CIVIL NO. 14-1590 (GAG)

## OPINION AND ORDER

The above-captioned case arises from the damages Emmanuel Fernández Jorge ("Fernández") and Carmen Lidia Jorge ("Lidia") (collectively referred to as "Plaintiffs") allegedly suffered as a result of Fernández being shot by a member of the Puerto Rico Police Department ("PRPD") following a pursuit of the vehicle of which Fernández was a passenger. Plaintiffs filed the present complaint against police officers Julio Galarza-Soto ("Galarza") and Juan Ortiz-Cruz ("Ortiz") in their individual capacities (collectively referred to as "Defendants"), alleging violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, pursuant to section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983. (Docket No. 1.) Plaintiffs also seek this court's supplemental jurisdiction for alleged violations of Articles 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141-42, and Article II of the Constitution of Puerto Rico.[1]  (Id.)

Presently before the court is Defendants' motion to dismiss Plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(6), in which they argue that Plaintiffs fail to state claims upon which relief

---

[1] Plaintiff fails to articulate which sections of Article II he claims Defendants violated.

**Civil No. 14-1590 (GAG)**

can be granted with the exception of Fernández's excessive use of force claim under the Fourth Amendment against Ortiz and Plaintiffs' state law claims under Article 1802 of Civil Code of Puerto Rico and Article II of the Constitution of Puerto Rico. (Docket No. 15.) Plaintiffs opposed said motion to dismiss. (Docket No. 16.)

After reviewing the pleadings and pertinent law, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 16.

**I.     Relevant Factual and Procedural Background**

In articulating the following facts of this case, the court recites such facts as alleged in the complaint, resolving any ambiguities in Plaintiffs' favor. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 5 (1st Cir. 2011). Fernández was a seventeen year old minor at all times relevant to the complaint and Lidia is his mother. (Docket No. 1 ¶¶ 1-2, 5.) Sergeant Galarza was the sergeant on duty for the PRPD and was in charge of the officers on scene during the relevant time pertaining to the incident with Fernández. (Id. ¶ 3.) Ortiz is an officer of the Puerto Rico Police Department. (Id. ¶ 4.)

In December, 2010, Fernández lived with his mother, Lidia, at the Alturas de Cupey Housing Project. (Id. ¶ 5.) On December 31, 2010, Fernández decided to go to the El Señorial shopping mall to buy a shirt. (Id. ¶ 6.) To get to the mall, Fernández rode with two acquaintances nicknamed Goty and Rafo, in an automobile. (Id.) Goty was driving, Rafo was sitting in the front passenger's seat, and Fernández was in the back seat. (Id. ¶ 7.) When getting into the vehicle, Fernández noticed that Rafo had a firearm on his waist. (Id. ¶ 8.) This was the first and last time that Fernández saw the firearm. (Id.)

Instead of going directly to the shopping mall, Goty and Rafo deviated toward a recycle center in Trujillo Alto, Puerto Rico. (Id. ¶ 9.) Goty and Rafo told Emmanuel "that they just were

going to collect some money there." (Id.) Emmanuel was unaware of the intent of Goty and Rafo, who when arriving at the center, exited the vehicle and then suddenly rushed back to the same. (Id. ¶ 10.) Goty drove the vehicle away from the scene while being pursued by police officers of the PRPD and local municipal department. (Id. ¶ 11.) The vehicle drove to a nearby housing development, known as Los Claveles. (Id. ¶ 12.) After approximately five minutes, and under the belief that the chase had ended, Goty drove the vehicle out of the development toward the Alturas de Cupey Housing Project. (Id.) The chase, however, continued once outside of the development. (Id. ¶ 13.) The police ordered the vehicle to stop, but Goty continued to attempt to evade them, at which time the police discharged their weapons at the fleeing vehicle. (Id. ¶ 14.) The pursuit ended when the vehicle lost control and crashed into a guardrail. (Id. ¶ 15.)

After the vehicle crashed, Rafo fled on foot and Fernández, fearing the police, followed into the nearby brush. (Id.) Several officers arrived, including defendant Ortiz and Ivan Lebrón-Lebrón. (Id. ¶ 17.) At an undisclosed time, Galarza arrived to the scene along with municipal police officers. (Id. ¶¶ 17-18.) The municipal police officers immediately detained Goty and realized that there was no threat to any officer. (Id. ¶ 19.) Despite the fact that Fernández posed no threat to the officers nor did he brandish a firearm, he was seized with deadly force by being shot in the back while he was lying face down in the ground, subdued. (Id. ¶¶ 20, 22.)

Plaintiff alleged that "Galarza acquiesced to the firearms discharge or at the very best was deliberately indifferent to his fellow officers actions, knowing that [Fernández] was unarmed and no police officer was in danger." (Id. ¶ 21.) Ortiz admitted to having discharged his firearm at Fernández, but a lack of an adequate investigation by Galarza resulted in it being unknown as to whether the bullets in Fernández's back was from Ortiz's firearm or the firearm of another police officer on scene. (Id. ¶ 22.) As a result of being shot, Fernández was bleeding, in pain, and

praying for assistance. (Id. ¶ 26.) After over an hour, Defendants and other officers at the scene took Fernández through the brush and placed him into a municipal pickup truck. (Id. ¶ 27.) No officer administered any medical assistance or bothered to wait for proper emergency services. (Id.) Defendants on scene saw what happened to Fernández, yet they did nothing to intervene. (Id. ¶ 30.) Indeed, an injured municipal officer was placed in a police car and taken to emergency medical services prior to Fernández. (Id. ¶ 28.)

Fernández was then taken in the municipal pickup truck to Auxilio Mutuo Expreso Hospital, where he was treated for the gun shots, but the medical personnel was unable to remove one bullet, and, as such, it remains lodged in his body for the rest of his life. (Id. ¶ 29.) As a result of being shot, Fernández was paralyzed and has thus lost his ability to walk for the rest of his life. (Id. ¶ 30.) Fernández's mother, Lidia, arrived to the hospital despite never being contacted by the PRPD because a friend who worked at the hospital contacted her. (Id. ¶ 31.) When she arrived, she suffered emotional and mental anguish at the plight to which Fernández had been subjected. (Id. ¶ 32.)

Thereafter, Plaintiffs filed suit in this court, claiming that the aforementioned acts amount to Ortiz and Galarza violating Fernández's Fourth, Fifth, and Fourteenth Amendment rights, and his rights under Articles 1802 and 1803 of the Civil Code of Puerto Rico and Article II of the Constitution of Puerto Rico. (Id. ¶¶ 38-41.) Plaintiffs further claim supervisory liability on part of Galarza in alleging that by authorizing the use of excessive force by certain police officers, Galarza engaged in inadequate training and supervision of the police force under his command. (Id. ¶ 34.) Defendants then moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket No. 15.) Plaintiffs opposed said motion to dismiss. (Docket No. 16.)

## II.     Standard of Review

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, see FED. R. CIV. P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. See Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011) which discusses Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Schatz, 669 F.3d at 55.  A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678-79.  Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Schatz, 669 F.3d at 55.  Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. Id. (citing Iqbal, 556 U.S. at 678-79).  This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Twombly, 550 U.S. at 556.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).  If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged,' the claim has facial plausibility." Ocasio-Hernández, 640 F.3d at 12 (quoting Iqbal, 556 U.S. at 678).

### III.  Discussion

In moving to dismiss, Defendants argue that: (1) Plaintiffs' claim under the Fifth Amendment fails because Defendants are not federal actors; (2) Lidia does not have standing to sue under 42 U.S.C. § 1983, as one can only ground such a claim upon the alleged violation of their own civil rights; (3) Plaintiffs' excessive use of force claim must be analyzed under the Fourth Amendment as opposed to the Fourteenth Amendment; (4) Plaintiffs' excessive use of force claim against Galarza fails because the complaint does not allege that Galarza used any force against Fernández; (5) Plaintiffs' failure to intervene claim fails because the facts are not sufficient to show that Galarza had a realistic opportunity to intervene and prevent Fernández from being shot; (6) the complaint fails to sufficiently plead supervisory liability on part of Galarza for many reasons; and (7) Plaintiffs' Article 1803 claim fails because they have not sufficiently alleged that Galarza was Ortiz's employer.  (Docket No. 15 at 10-16, 18-22.)

In response, Plaintiffs argue that: (1) the Fifth Amendment applies to Defendants because of Puerto Rico's territorial status; (2) they are not asserting any federal claims with respect to Lidia; rather, they assert pendant state claims, but fail to argue such claims on the merits; (3) they have indeed pleaded sufficient facts to show a Fourth Amendment violation; (4) they sufficiently plead a failure to intervene claim because the officers had used excessive force throughout the entire chase and they failed to seek immediate attention once Fernández was shot; and (5) they sufficiently pleaded a supervisory liability claim due to the apparent lack of training and supervision of the officers under Galarza's command.  (Docket No. 16 at 9-16.)  The court will address each argument in turn.

A.  Section 1983 Claims: Generally

Section 1983 does not create any independent substantive rights. Caraballo v. P.R., 990 F. Supp. 2d 165, 172-73 (D.P.R. 2014). It is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. See Baker v. McCollan, 443 U.S. 137, 145, n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To establish liability under section 1983, a plaintiff must demonstrate that the defendant, acting under color of state law, violated his or her federal constitutional rights, thereby causing the complained of injury. See West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988). There are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or immunities, and (2) the conduct complained of must have been causally connected to the deprivation." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Figueroa-Garay v. Municipality of Rio Grande, 364 F. Supp. 2d 117, 122 (D.P.R. 2005). This second element of causal connection in turn requires that the plaintiff show: (1) it was the defendant's own actions that deprived the plaintiff of the protected right; and (2) that the conduct was intentional, grossly negligent, or amounted to a reckless or callous indifference. See Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997); Gutiérrez-Rodríguez, 882 F.2d at 560-61. Furthermore, the plaintiff must also show that each individual defendant was involved personally in the deprivation of constitutional rights because no *respondeat superior* liability exists under section 1983. See Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014).

A.   Excessive Use of Force Under the Fifth Amendment

Turning first to Plaintiffs' claim under the Due Process Clause of the Fifth Amendment to the United States Constitution, the court notes that it is well-settled that said clause "applies only to actions of the federal government—not to those of state or local governments." Martinez-Rivera v. Sanchez Ramos, 498 F.3d 3, 8 (1st Cir. 2007); Pub. Utilities Comm'n of D.C. v. Pollak, 343 U.S. 451, 461, 72 S. Ct. 813, 96 L. Ed. 1068 (1952). Regardless of whether one is to consider the Commonwealth of Puerto Rico a state or territory purposes of a constitutional violation, the First Circuit analyzes the actions of Puerto Rico government actors as actions of a state, and, as such, subjects them to constitutional limitations through the Fourteenth Amendment.[2] See Martinez-Rivera, 498 F.3d at 8-9 (finding in a case involving Puerto Rico government actors that "[a]s plaintiffs do not allege that any of the defendants are federal actors, any Fifth Amendment claim was properly dismissed").

Accordingly, because in the present case only PRPD actors are named as defendants, the Fifth Amendment is inapplicable to Defendants. Therefore, the court hereby **GRANTS** Defendants' motion to dismiss this claim and **DISMISSES** it accordingly.

B.   Excessive Use of Force Under the Fourteenth Amendment

With respect to Plaintiffs' claim under the Fourteenth Amendment, the United States Supreme Court has held that "*all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach." Graham v. Connor, 490 U.S. 386, 395, 109 S. Ct.

---

[2] Furthermore, First Circuit jurisprudence has consistently considered Puerto Rico as a Commonwealth as opposed to a mere territory or possession of the United States for decades. See Diaz Morales v. Commonwealth of Puerto Rico, No. 15-1096 GAG, 2015 WL 4742512 (D.P.R. Aug. 11, 2015) (slip opinion); United States v. Mercado-Flores, No. 14-466 GAG, 2015 WL 3764518 (D.P.R. June 4, 2015); United States v. Mercado-Flores, No. 14-466 GAG, 2015 WL 4132355 (D.P.R. July 8, 2015) (denying reconsideration).

**Civil No. 14-1590 (GAG)**

1865, 104 L. Ed. 2d 443 (1989); see <u>Estate of Bennett v. Wainwright</u>, 548 F.3d 155, 163 (1st Cir. 2008) (holding that because the protections of the Fourth Amendment apply to the present excessive force claim, plaintiffs' "substantive due process claim cannot advance"). Indeed, Plaintiffs concede as much in their opposition to Defendants' motion to dismiss. (<u>See</u> Docket No. 16 at 11.) Further, it is not disputed here that Fernández was seized by the PRPD. Therefore, the court will proceed to analyze Fernández's excessive force allegations under the Fourth Amendment standard and not under the Fourteenth Amendment.

Before moving onto the next disputed issue, the court briefly addresses Plaintiffs' argument in their opposition in which they claim that Defendants violated Fernández's Eight Amendment rights as well. (<u>See</u> Docket No. 16 at 12.) The Eighth Amendment to the United States Constitution prohibits the imposition of "cruel and unusual punishment." U.S. CONST. amend. VII. Contrary to Plaintiffs' contention, this Amendment applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." <u>Martinez-Rivera</u>, 498 F.3d at 9 (citing <u>City of Revere v. Massachusetts Gen. Hosp.</u>, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)). "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." <u>Martinez-Rivera</u>, 498 F.3d at 9. As such, because Fernández had merely been seized by the PRPD following the police chase, and thus not even remotely close to any formal adjudication of guilt at the time of the alleged constitutional deprivation, the Eighth Amendment is inapplicable.

Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' excessive force claim under the Fourteenth Amendment and thus **DISMISSES** said claim. Insofar as Plaintiffs

argue that Fernández's Eighth Amendment rights were violated, the court sua sponte **DISMISSES** that claim.

        C.    <u>Excessive Use of Force under Fourth Amendment as to Galarza</u>

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by the government. <u>See</u> U.S. CONST. amend. IV. To recover under section 1983 for a Fourth Amendment violation, a plaintiff must demonstrate that the force used by the defendant was objectively unreasonable given the totality of the relevant circumstances. <u>See</u> <u>Bastien v. Goddard</u>, 279 F.3d 10, 14 (1st Cir. 2002); <u>Napier v. Town of Windham</u>, 187 F.3d 177, 182-83 (1st Cir. 1999). The determination of whether the force used to effect a particular arrest is reasonable under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. <u>See</u> <u>Graham</u>, 490 U.S. at 396. The use of deadly force is constitutional only if an officer has "probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." <u>See</u> <u>Tennessee v. Garner</u>, 471 U.S. 1, 3, 11, 105 S. Ct. 1694, 85 L. Ed. 2d 1 (1985) ("A police officer may not seize an unarmed, nondangerous person by shooting him dead.").

In moving to dismiss, Defendants argue that Plaintiffs fail to plead a single fact indicating that Galarza used any force against Fernández in carrying out his arrest. (Docket No. 15 at 13-14.) Plaintiffs fail to respond to Defendants' argument in their opposition. Although an examination of the complaint does indeed reveal that Plaintiffs fail to allege Galarza used any force to arrest Fernández, the court finds that dismissal of this claim is not appropriate at this juncture, as discovery may reveal that the Galarza did participate in the alleged unconstitutional arrest. District

courts should accord "some latitude" in cases where "[a] material part of the information needed is likely to be within the defendant's control." García-Catalán v. United States, 734 F.3d 100, 104 (1st Cir. 2013).  As such, "the plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case." Id.  Therefore, it is reasonable to expect that "modest discovery may provide the missing link" for this disputed issue. Id. at 105.  In section 1983 cases such as the present case, it is often the case that a significant portion of evidence is within the control of the police officers.  As such, because it seems to be the case that Galarza was at the scene before or slightly after the shooting and Fernández was kept at the scene for an hour thereafter, Galarza could very well have used force against Fernández during his arrest.

Therefore, the court **DENIES** Defendants' motion to dismiss any Fourth Amendment claim that Plaintiffs assert against Galarza.

### D. Failure to Intervene Under the Fourteenth Amendment

Plaintiffs further allege that in contrast to affirmative action by Defendants, their presence at the scene during the shooting of Fernández and their failure to intervene to prevent harm against him violated his substantive due process rights. (See Docket Nos. 1 ¶¶ 38-39; 16 at 12-13.)  The First Circuit has recognized that "'[a]n officer who is present at the scene [of an arrest] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance,' provided that he had a 'realistic opportunity' to prevent the other officer's actions.'" Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995) (quoting Gaudreault v. Municipality of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990), cert. denied, 500 U.S. 956, 111 S. Ct. 2266, 114 L .Ed. 2d 718 (1991)); see also Calvi v. Knox County, 470 F.3d 422, 428 (1st Cir. 2006) ("a bystander officer who has a realistic opportunity to prevent the use of excessive force by a fellow officer may in certain circumstances be held liable for failure to

intervene"). Defendants argue that with respect to Galarza, Plaintiffs fail to sufficiently plead that he had any reasonable opportunity to prevent Ortiz from shooting Fernández. (Docket No. 15 at 16.) Plaintiffs respond by making conclusory arguments, such as: "The officers at the scene in the instant case had either knowledge that excessive force was being used since the moment the chase commenced; that the plaintiff's apprehension was unjustified and unnecessary; and were all in a position to realistically intervene and prevent harm." (Docket No. 16 at 13.)

The court agrees with Defendants that the facts as pleaded by Plaintiffs are decently vague, particularly with respect to when Galarza arrived to the scene where Fernández was injured. Not only do they fail to plead as to how Galarza could have prevented Fernández from being shot by Ortiz, but also do not explain why the case of the vehicle or Fernández's apprehension was unnecessary. That being said, when reading the complaint in the light most favorable to Plaintiffs, it can be reasonably inferred that Galarza arrived on scene before or shortly after Ortiz shot Fernández while he was on the ground. (See Docket No. 1 ¶¶ 17-22.) As the court noted above, its "plausibility inquiry properly takes into account whether discovery can reasonably be expected to fill any holes in the pleader's case," and like the Fourth Amendment claim against Galarza, the court finds that modest discovery could provide the missing link for this claim. See García-Catalán, 734 F.3d at 104. As such, whether Galarza had a "realistic opportunity" to prevent Ortiz's actions should be fleshed out in discovery and revisited at summary judgment.

Furthermore, the complaint then alleges that Defendants did not take Fernández to seek medical attention for over an hour. (Docket No. 1 ¶ 27.) Rather, Defendants allowed Fernández to stay at the scene while he was bleeding, in pain, and praying for assistance. (Id. ¶ 26.) This nonfeasance alone by Galarza is sufficient to amount to a violation of Fernández's substantive due process rights. As such, the court finds that at this stage in the litigation, Plaintiffs sufficiently

plead a failure to intervene claim against Galarza. With respect to Ortiz, however, as he is the primary actor who allegedly shot Fernández, he cannot be liable for failing to intervene in his own actions.

Accordingly, the court **DENIES** Defendants' motion to dismiss Plaintiffs' failure to intervene claim as to Galarza, and **GRANTS** the same as to Ortiz and thus **DISMISSES** the latter claim against Ortiz.

E.  <u>Supervisory Liability</u>

Furthermore, Plaintiffs also alleges that Galarza's failure to train, supervise, and discipline the police officers under his command amounts to a deliberate and willful indifference to his federal protected Fourth Amendment rights which directly caused his damages. Plaintiffs allege that Galarza was at all times aware of the gross deficiencies in training, discipline, and supervision that could very likely cause a violation of Fernández's civil rights. (<u>Id.</u> ¶ 35.) They argue that the lack of an adequate investigation or evaluation of the police officers involved shows Galarza's deliberate indifference. (<u>Id.</u> ¶ 36.) Specifically, Plaintiffs allege:

> Sergeant Galarza acquiesced to the firearms discharge or at the very best was deliberately indifferent to his fellow officers actions, knowing that Emmanuel was unarmed and no police officer was in danger. . . . [Oritz] was [an] unfit police officer that was allowed to remain on the force because of the faulty recruitment, supervision and training policies. . . . Defendant Galarza in authorizing the use of excessive force by certain police officers engaged in inadequate, training and supervision of the police force under his command. Sergeant Galarza himself has admitted to his awfully inadequate training in civil rights and use of force. . . Sergeant Galarza was at all times aware of the gross deficiencies in training, discipline and supervision that could very likely cause, as it did in this case, the violation of plaintiff's civil rights. . . . Indeed in furtherance of this, no adequate investigation or evaluation of the police officers involved was performed and that in itself shows the deliberate indifference.

(<u>Id.</u> ¶¶ 21, 23, 34-36.)

**Civil No. 14-1590 (GAG)**

In an action brought under section 1983, "supervisors are not automatically liable for the misconduct of those under their command," Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000), because, as noted above, supervisory liability may not be based on the doctrine of *respondeat superior*. Ramirez-Lluveras, 759 F.3d at 19. Nevertheless, a superior officer may be held liable under section 1983 for their own acts or omissions. Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). The supervisor can be held liable for his own acts or omissions either through the supervisor's direct participation in the unconstitutional conduct, or "where '(1) the behavior of [his] subordinates results in a constitutional violation and (2) the [supervisor's] action or inaction was *'affirmatively link[ed]'* to the behavior in the sense that it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence [. . .] amounting to deliberate indifference.'" Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005) (quoting Camilo-Robles v. Zapata, 175 F.3d 41, 44 (1st Cir. 1999)).

A supervisor's action or inaction amounting to deliberate indifference will be found only if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." Germany v. Vance, 868 F.2d 9, 18 (1st Cir. 1989). "The affirmative link requirement contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." Hegarty v. Somerset County, 53 F.3d 1367, 1380 (1st Cir. 1995) (internal citations and quotations omitted). In determining whether a supervisor is liable, his knowledge regarding the subordinate's behavior is considered. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 93 (1st Cir. 1994). Moreover, a supervisor without actual knowledge may be liable if he would have known of injurious conduct but for his "willful blindness" or deliberate indifference. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994).

A supervisor's failure to adequate train or discipline his subordinates can be grounds for supervisory liability. Such a claim is actionable under the Fourth Amendment where "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact" and where the plaintiff shows that the "particular officers who committed the violation had been deprived of adequate training, and that this specific failure in training was at least a partial cause of the ultimate injury." Whitfield, 431 F.3d at 10 (citing Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005)). For a deficient training program to amount to deliberate indifference, the training must be more than merely imperfect and it must be shown that defendant "disregarded a known or obvious risk of serious harm from its failure to develop a training program" that meets adequate standards. Young, 404 F.3d at 27-28. Because a generalized showing of a training program's deficiency is insufficient, therefore, the plaintiff must show that the officers that committed the violation were not given adequate training, leading to his injuries. Whitfield, 431 F.3d 1, 10 (1st Cir. 2005) (referencing Young, 404 F.3d at 26).

Turning to the present case, a review of the allegations reveals that Plaintiffs have failed to provide sufficient evidence establishing that the PRPD police officers were inadequately trained, and, as such, it follows that they also fail to prove that the Galarza was deliberately, recklessly or callously indifferent to Fernández's constitutional rights. Instead, Plaintiffs simply allege that the training of the PRPD officers was insufficient, without explaining how, and claim that "Galarza himself has admitted to his awfully inadequate training in civil rights and use of force," but do not explain any further as to when or how that statement was made. See Santiago Irizarry v. Maldonado Aponte, 296 F. Supp. 2d 146, 152 (D.P.R. 2003) ("Plaintiffs failed to explain specifically how [the supervisor's] acts or omissions caused the alleged constitutional violations or that the police training was in fact inefficient."). Thus, Plaintiffs fail "to show that there were *any*

training deficiencies, much less that [Galarza] should have known that there were . . . training problems." Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994) (internal quotation marks omitted); Rodríguez-Vázquez v. Cintrón Rodríguez, 160 F. Supp. 2d 204, 212 (D.P.R. 2001) (noting that the failure to allege prior wrongdoings or supervisor's knowledge of such is fatal to claim of supervisory liability under section 1983); Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014) ("Further, [section] 1983 liability cannot rest solely on a defendant's position of authority.") (citing Ocasio-Hernández, 640 F.3d at 16).

With respect to Galarza's supervision of the PRPD officers at the time of alleged constitutional violations against Fernández, however, Plaintiffs' claim survives. As noted above, a supervisor's inaction can amount to deliberate indifference if "it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights," Vance, 868 F.2d at 18, and such "conduct led inexorably to the constitutional violation." Hegarty, 53 F.3d at 1380. Taking the facts as alleged in the light most favorable to Plaintiffs, the court finds that a reasonable supervising sergeant of the PRPD officers on scene would have known that allowing Fernández to stay on the ground while bleeding, in pain, and praying for help for an hour was very likely to violate his constitutional rights. As the supervising officer, Galarza had a duty to instruct the officers to obtain adequate medical treatment for Fernández, as opposed to failing to supervise in any manner. Further, his inaction can be reasonably inferred to be affirmatively linked to the constitutional violation because had Galarza instructed the officers to seek medical attention for Fernández, as subordinates, they would have likely complied. The court notes, however, that insofar as Plaintiffs argue that Galarza's failure to supervise the officers during the pursuit of the vehicle because it was "unnecessary," the court rejects this claim as it is merely a conclusory allegation.

Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim of failure to train as to Galarza and **DENIES** Defendants' motion to dismiss Plaintiffs' failure to supervise as to Galarza as articulated above.

### F. Supplemental State Law Claims

Lastly, the court turns to Plaintiffs' supplemental claims. To start, the court notes that to the extent that Defendants argue that Lidia's section 1983 claim fails as a matter of law because said section only imposes liability for conduct that subjects the complainant to the deprivation of the Constitution and law of the United States, see Rizzo v. Goode, 423 U.S. 362, 370-71, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976), Plaintiffs readily concede in their opposition that Lidia's claims are only grounded in Puerto Rico law. (See Docket No. 16 at 9.) As such, the only argument left for the court to address is Plaintiffs' Article 1803 claim against Defendants.[3]

Pursuant to Article 1802 of the Puerto Rico Civil Code, people are liable for damages when "by an act or omission [they] cause damage to another through fault or negligence." P.R. LAWS ANN. tit. 31, § 5141. "As a general rule, a person is only liable for his own acts or omissions and only by exception is a person liable for the acts or omissions of others." Ocasio v. Hogar Geobel Inc., 693 F. Supp. 2d 167, 178 (D.P.R. 2008) (referencing Vélez v. Llavina, 18 D.P.R. 656 (1912)). Article 1803 provides an exhaustive list of special circumstances in which a party, such as an employer, may be vicariously liable for the torts committed by another party. See P.R. LAWS ANN. tit. 31, § 5142; Vernent v. Torres, 740 F. Supp. 2d 280, 286-87 (D.P.R. 2010); Ocasio v. Hogar Geobel Inc., 693 F. Supp. 2d 167, 178 (D.P.R. 2008) ("[t]he imposition of tort liability for the actions of a third party arises only under certain exceptional circumstances"). The only exception that would be applicable to the present case is that "[t]he obligation imposed by [Article 1802] is

---

[3] Defendants do not move to dismiss Plaintiffs' Article 1802 claim against them nor do they move to dismiss Plaintiffs' claims under the Puerto Rico Constitution. As such, said claims survive.

17

**Civil No. 14-1590 (GAG)**

demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible. . . . Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties." P.R. LAWS ANN. tit. 31, § 5142; Vernent v. Torres, 740 F. Supp. 2d at 286-87.

Turning to the present case, the court agrees with Defendants that Plaintiffs have failed to plead sufficient facts to state a claim against Galarza under Article 1803 to hold him vicariously liable for the damages caused by Ortiz.  Even when reading the complaint in the light most favorable to Plaintiffs, there are not enough facts alleged to infer that there was an employer-employee relationship between Galarza and Ortiz.  Other than alleging at the end of the complaint that "[t]he acts and omissions of the defendants breached Article 1802 and Article 1803 of the Civil Code of Puerto Rico" (Docket No. 1 ¶ 41), Plaintiffs fail to plead such a relationship that would allow for vicarious liability.  See Rivera-Concepcion v. Puerto Rico, 786 F. Supp. 2d 442, 451 (D.P.R. 2010) (holding plaintiffs fail to sufficiently plead that defendant was an employer of a co-defendant for Article 1803 purposes) (citing Vargas v. Toledo Davila, No. 08-1527, 2010 WL 624126, at *2 (D.P.R. Feb. 17, 2010)).  These allegations merely recite the law of the claim and thus fail to "nudge [the claim] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Therefore, the court must disregard as conclusory such factual allegations that are merely legal conclusions couched as fact. See Iqbal, 556 U.S. at 678.

Also telling is that Plaintiffs do not address Defendants' arguments regarding Article 1803 in their opposition, and thus point to no authority that shows that Galarza could be considered Ortiz's employer for purposes of vicarious liability under Article 1803.

**Civil No. 14-1590 (GAG)**

Accordingly, the court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim under Article 1803 and thus **DISMISSES** said claim.

## IV. Conclusion

In sum, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss at Docket No. 15. The court **GRANTS** Defendants' motion to dismiss as to the following claims: (1) excessive use of force claims under the Fifth and Fourteenth Amendments as to both defendants; (2) failure to intervene as Ortiz; (3) failure to train as to Galarza; and (4) vicarious liability as to Galarza.

Accordingly, the following claims remain against Defendants: (1) excessive use of force under the Fourth Amendment as to Defendants; (2) failure to intervene under the Fourteenth Amendment as to Galarza; (3) failure to supervise as to Galarza; (4) negligence under Article 1802 as to Defendants; and (5) excessive use of force under the Puerto Rico Constitution.

**SO ORDERED.**

In San Juan, Puerto Rico this 31st day of August, 2015.

*s/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge