IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EMMANUEL FERNÁNDEZ JORGE and
CARMEN LIDIA JORGE,

Plaintiffs,

v.

SERGEANT JULIO GALARZA-SOTO
and JUAN CARLOS ORTIZ-CRUZ,

Defendants.

CIVIL NO. 14-1590 (GAG)

## OPINION AND ORDER

This case concerns an altercation between Emmanuel Ferdández Jorge ("Fernández") and officers of the Puerto Rico Police Department ("PRPD") in which Fernández was shot and seriously injured. Fernández, along with his mother, Carmen Lidia Jorge ("Jorge"), bring this suit pursuant to section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, seeking to recover damages from two defendants in their individual capacities: Officer Juan Carlos Ortiz-Cruz ("Ortiz") and Sergeant Julio-Galarza-Soto ("Galarza") of the PRPD. (Docket No. 1.) Plaintiffs also bring supplemental state law claims against these Defendants under Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141, and Article II of the Constitution of Puerto Rico. Id.

Presently before the Court is Defendants' motion for summary judgment. (Docket No. 76.) Primarily, Defendants argue Plaintiffs' claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), which bars any section 1983 damages claim that would invalidate a state conviction. (Docket No. 76, at 5-10.) As a fallback, Defendants seek summary judgment on Plaintiffs' excessive force, failure to intervene, and supervisory liability claims, arguing no genuine dispute of material fact exists on each of those claims. Id. at 10-24. In opposition, Plaintiffs argue (1) Heck does not apply

**Civil No. 14-1590 (GAG)**

to juvenile administrative proceedings; (2) the facts established in Fernández's juvenile proceedings do not contradict the facts of this case; and (3) even taking the juvenile proceeding facts as conclusively established, genuine issues of material fact nonetheless preclude summary judgment as to each of Plaintiffs' claims. (Docket No. 89.) After review of the factual record and applicable law, Defendants' motion for summary judgment at Docket No. 76 is **DENIED**.

I. **Relevant Factual and Procedural Background[1]**

The events relevant to this case took place on December 31, 2010. At that time, Plaintiff Fernández was a seventeen-year-old minor. (Docket Nos. 1 ¶ 5; 28 ¶ 5.) Fernández lived with his mother, Jorge, in the Alturas de Cupey Housing Project. (Docket Nos. 1 ¶ 5; 28 ¶ 5.)

On December 31, 2010, Fernández got into a champagne colored, four-door Honda with two other individuals, nicknamed Goty and Rafo. (Defendants' Statement of Uncontested Material Facts, hereinafter "DSUMF", Docket No. 76-1, ¶¶ 1, 2; Plaintiffs' Statement of Uncontested Material Facts, hereinafter "PSUMF", Docket No. 89-1, ¶¶ 1, 2.) Fernández got into the car believing he would be given a ride to a nearby shopping mall. (PSUMF ¶ 6.) Once inside the car, Fernández learned that Rafo was armed with a black firearm on his waist. (DSUMF ¶¶ 6, 7; PSUMF ¶¶ 6, 7.) The three young men did not drive to the mall. Instead, they drove to the Recycling Center in Trujillo Alto to "collect owed money." (PSUMF ¶ 225.) Ferndández stayed in the back seat of the car while the Goty and Rafo got out of the car at the Recycling Center. Id. at ¶ 226.

The police spotted them at the Recycling Center almost immediately. PRPD Officers Rivera and Figueroa, who had just started their 10:00 AM police shift, observed two individuals get out of a champagne-colored Honda, in what appeared to be a robbery of the Recycling Center. (DSUMF

---

[1] The Court states the facts in the light most favorable to Plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

2

**Civil No. 14-1590 (GAG)**

¶¶ 16, 17; PSUMF ¶¶ 16, 17.) Then, the two individuals hurried back into the car and drove away from the Recycling Center. (DSUMF ¶ 17, 18; PSUMF ¶¶ 17, 18.)

A car chase followed. Rivera pursued the vehicle; Figueroa stayed at the Recycling Center. (DSUMF ¶¶ 18, 19; PSUMF ¶¶ 18, 19.) Figueroa radioed to the precinct, describing the car and the direction the individuals fled. (DSUMF ¶¶ 20, 21; PSUMF ¶¶ 20, 21.) The information was dispatched out to other precincts and the municipal police. (DSUMF ¶ 108; PSUMF ¶ 108.) Ferndández recalled being followed by both green (Municipal) and blue (PRPD) police officers. (PSUMF ¶¶ 228; Defendants' Reply Statement of Uncontested Material Facts, hereinafter "DRSUMF", Docket No. 95-1, ¶ 228.) According to Fernández, officers shot at the car during the car chase.[2] (PSUMF ¶ 227.)

Officer Ortiz's involvement in the incident began when another PRPD officer radioed to the PRPD precinct describing the Recycling Plant robbery and subsequent car chase. (DSUMF ¶ 27; PSUMF ¶ 27.) Ortiz and his partner, Officer Lebrón, left the precinct and drove to the area described in the radio call, Road 843 in Trujillo Alta. (DSUMF ¶¶ 28, 29; PSUMF ¶¶ 28, 29.) When Oritz and Lebrón arrived at the scene, Officer Rivera was watching over the abandoned car. (DSUMF ¶¶ 29, 34; DSUMF ¶¶ 29, 34.) Ortiz and Lebrón learned that the three individuals had fled the car on foot, and headed down the hill on the side of the road. (DSUMF ¶ 33; PSUMF ¶ 33.) Ortiz and Lebrón set out looking for the individuals, but "[t]hey had no plan" and they eventually split up. (DSUMF ¶ 35; PSUMF ¶ 35.) Ortiz did not see any other officers in the area as he continued to pursue the Recycle Center robbery suspects. (DSUMF ¶ 73; PSUMF ¶ 73.)

Galarza was the sergeant on duty for the PRPD and was in charge of the officers on scene during the relevant time pertaining to the incident with Fernández. (Docket Nos. 1 ¶ 3; 28 ¶ 3.)

---

[2] Defendants contest this fact. (DRSUMF ¶ 227.)

3

**Civil No. 14-1590 (GAG)**

Galarza learned of the incident in a telephone call from Figueroa. (DSUMF ¶¶ 105, 106; PSUMF ¶¶ 105, 106.) He arrived at abandoned car at Road 843 after Officer Ortiz began his pursuit on foot. (DSUMF ¶ 109; PSUMF ¶ 109.) Galarza instructed Lebrón and Ortiz to search the hillside area for the suspects who had fled the car. (DSUMF ¶ 177; PSUMF ¶ 177.) Sometime after Galarza arrived at the scene, he heard, but did not see, four or five gunshots coming from the down the hill. (DSUMF ¶¶ 110-12; PSUMF ¶¶ 110-12.)

While the parties present different versions of the events immediately before the shooting, certain facts are undisputed. Ortiz pursued two individuals on foot into the woods. (DSUMF ¶¶ 76, 77; PSUMF ¶¶ 76, 77.) The two individuals were Fernández (white shirt) and Rafo (blue shirt). (DSUMF ¶ 92; PSUMF ¶ 92.) Fernández was unarmed. (DSUMF ¶ 80, PSUMF ¶ 80.) At some point, Ortiz shot at the two individuals. (DSUMF ¶ 85; PSUMF ¶ 85.) Fernández was hit by bullets from Oritz's gun. (DSUMF ¶¶ 86, 87; ¶¶ 86, 87.) Rafo was never apprehended and his gun was never recovered. (DSUMF ¶ 93; PSUMF ¶ 93.) From there, Plaintiffs' and Ortiz's version of events diverge significantly. For the sake of clarity, the Court sets forth each account separately.

According to Fernández, when he got out of the car and fled on foot, he did not surrender to the authorities because he feared for his life. (PSUMF ¶ 229.) Then, the police shot at Fernández and Rafo while they ran through the woods. Id. ¶ 231. Fernández and Rafo then lay down in the approximately three-foot high grass on the hill, as officers continued to shoot. Id. ¶ 232. About two minutes later, while Fernández lay in the grass, he was shot in the back. Id. ¶¶ 232, 241. Fernández rolled over to see officers approaching him with their guns drawn. Id. ¶ 234. Fernández was shot three times during the incident. Id. ¶ 242. Fernández knew Rafo had a gun, but he never saw Rafo use the gun. Id. ¶ 235.

Ortiz describes the foot chase and apprehension of Fernández quite differently. Ortiz was

4

**Civil No. 14-1590 (GAG)**

alone in the woods. (DSMUF ¶ 77.) As Ortiz looked through the tall grass and trees for movement, he saw two individuals walking and looking around, as if they thought they were being followed. Id. The two individuals were about 150 feet away. Id. ¶ 88. An individual wearing a blue shirt turned around, raised his gun, and fired multiple shots at Ortiz. Id. ¶¶ 79, 82. In response, Ortiz ducked and fired back at the individual in the blue shirt. Id. ¶¶ 83, 84. Ortiz did not call for backup. Id. ¶ 81. When the gunfire ceased, Ortiz observed an individual in a white shirt laying on the ground, while the individual in the blue shirt fled. Id. ¶¶ 86, 87. Ortiz later learned that the individual in the white shirt was Plaintiff Fernández. Id. ¶¶ 92-95.

The events after the shooting are disputed as well. Fernández claims he was grabbed by a few police officers, carried out of the woods, and placed in the bed of a pick-up truck. (PSUMF ¶ 92.) Fernández remained at the scene, bleeding and in pain, for over an hour. Id. No ambulance ever arrived, so officers transported him, in the back of a pick-up truck, to the hospital. Id.

Defendants, by contrast, rely on the testimony of Emergency Management Officer Luis Marte Ayala ("Marte"). (DSUMF ¶¶ 115-34.) Marte received a call about a wounded officer in the area. Id. ¶ 117. When Marte arrived, there was no wounded officer, but he heard gunshots and received a second call describing a wounded individual nearby. Id. ¶¶ 120, 123. Marte tried to call an ambulance, but none were available. Id. ¶¶ 121, 128. He saw officers carrying Fernández out of the woods. Id. ¶¶ 124-26. According to Marte, the distance Fernández was carried, from the woods to the road, was about a mile. Id. ¶ 126. Fernández was conscious. Id. ¶ 129. Fernández then lay on the side of the road for ten to twenty minutes. (Docket No. 76-8, at 27.) Marte was instructed by other officers—it is unclear who—to put Fernández in the back of his pick-up truck, and drive him to the hospital. (DSUMF ¶ 129.) Marte then drove Fernández in the pickup truck to Auxilio Mutuo Expreso Hospital, where he was treated for the gun shot wounds. Id. ¶ 131. Over an hour

5

**Civil No. 14-1590 (GAG)**

passed from when he learned Fernández had been shot to when he took Fernández to the hospital. (PSUMF ¶ 92; DRSUMF ¶ 205; see also Docket No. 76-8, at 17.)

Fernández was summoned to juvenile court and charged with nine juvenile offenses. (DSUMF ¶¶ 2, 9; PSUMF ¶¶ 2, 9.) Eight of the nine offenses were directly related to the robbery at the Recycling Center. (Docket No. 80-1, at 1, 5, 9, 13, 17, 21, 26, 31.) The ninth offense involved the encounter with Officer Ortiz in the woods. Id. at 35-38. That firearms offense charged Fernández with "aiding and abetting with other persons; illegally, voluntarily and maliciously, and with intention, point[ing] a firearm at Agt. Juan Carlos Ortiz Cruz, while he was complying with his duty." Id. at 36. Fernández pled guilty to all nine offenses, and pursuant to a sentencing agreement approved at the juvenile proceeding, served a concurrent sentence of one-year probation for each offense. (DSUMF ¶¶ 13, 14, 169; PSUMF ¶¶ 13, 14, 169.)

Plaintiffs originally filed suit in federal court on December 30, 2011 against the Commonwealth of Puerto Rico and various high-ranking police officers. See Jorge v. Police Dep't of the Commonwealth of Puerto Rico, No. 11-2268 (JAG) (D.P.R. Dec. 30, 2011). Apparently, Plaintiffs were unable to identify Galarza, and failed to locate Ortiz. (Id. at Docket Nos. 1, 19.) Thereafter, Plaintiffs filed the instant complaint against Ortiz and Galarza, claiming damages under 42 U.S.C. § 1983 for violations of Fernández's constitutional rights and related state law claims. Defendants moved to dismiss Plaintiff's complaint, which the Court granted in part and denied in part. Fernández-Jorge v. Galarzo-Soto, 124 F. Supp. 3d 57 (D.P.R. 2015). Following the motion to dismiss, five claims remain in this action: (1) excessive force as to both Defendants; (2) failure to intervene as to Galarza; (3) failure to supervise as to Galarza; (4) Article 1802 tort; and (5) excessive force under the Puerto Rico Constitution. Id. at 72.

## II. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also FED. R. CIV. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, . . . and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted). The movant bears the initial burden of demonstrating the lack of evidence to support the nonmovant's case. Celotex, 477 U.S. at 325. Then, burden then shifts back to the nonmovant, who must establish at least one issue of fact that is both genuine and material. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

The nonmovant may establish a fact is genuinely in dispute by citing particular evidence in the record or showing that the material cited by the movant "do[es] not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(B). If the Court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the Court must deny summary judgment. Liberty Lobby, 477 U.S. at 248.

The Court views the evidence in the light most favorable to the nonmovant, resolving all reasonable inferences in that party's favor, without making any credibility determinations or weighing the evidence. Id. However, summary judgment is appropriate when the nonmovnt's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayagüez, 440 F.3d 17, 21 (1st Cir. 2006) (citation omitted).

**Civil No. 14-1590 (GAG)**

## III. Discussion

Defendants seek summary judgment under Heck v. Humphrey, arguing that Fernández's juvenile proceedings bar any subsequent section 1983 damages claim. (Docket No. 76, at 5-10.) Defendants also contend that no material issues of fact are genuinely disputed, such that summary judgment is warranted on Plaintiffs' excessive force, failure to intervene, and supervisory liability claims. Id. at 10-24. Plaintiffs raise three arguments in response: (1) Heck does not apply to juvenile administrative proceedings; (2) the facts established in Fernández's juvenile proceedings do not contradict the facts of this case; and (3) even taking the juvenile proceeding facts as conclusively established, genuine issues of material fact nonetheless preclude summary judgment as to each of Plaintiffs' claims. (Docket No. 89.)

### A. Section 1983 Overview

Section 1983 does not create independent substantive rights. Caraballo v. Commonwealth of Puerto Rico, 990 F. Supp. 2d 165, 172-73 (D.P.R. 2014). Rather, the statute creates a cause of action to vindicate constitutional and federal statutory rights infringed upon by state actors. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). The statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To establish section 1983 liability, a plaintiff must demonstrate that the defendant, acting under color of state law, violated his or her federal constitutional rights, thereby causing the complained of injury. See West v. Atkins, 487 U.S. 42, 48 (1988). There are two aspects to the second inquiry: "(1) there must have been a deprivation of federally protected rights, privileges or

**Civil No. 14-1590 (GAG)**

immunities, and (2) the conduct complained of must have been causally connected to the deprivation." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989); Figueroa-Garay v. Municipality of Rio Grande, 364 F. Supp. 2d 117, 122 (D.P.R. 2005). A causal connection is established by showing that: (1) defendant's own actions deprived plaintiff of the protected right; and (2) the conduct was intentional or grossly negligent, or amounted to a reckless or callous indifference. See Rodríguez-Cirilo v. García, 115 F.3d 50, 52 (1st Cir. 1997); Gutiérrez-Rodríguez, 882 F.2d at 560-61. Additionally, since there is no *respondeat superior* liability for section 1983 claims, plaintiff must establish each defendant's personal involvement in the constitutional deprivation. Ramírez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19 (1st Cir. 2014).

      B. Cognizability of Plaintiff's Section 1983 claims under *Heck v. Humphrey*

Defendants' main argument for summary judgment is that Fernández's state juvenile proceeding renders his section 1983 damages claims noncognizable. (Docket No. 76, at 5-10.) Defendants' argument takes two forms: (1) Fernández seeks to relitigate his innocence through section 1983, which Heck prohibits; and (2) Fernández's 1983 excessive force claim would negate an element of an offense to which Fernández pled guilty in his juvenile proceeding. Both arguments misunderstand the relationship between Fernández's juvenile proceedings and his section 1983 claims. Heck does not bar Fernández's section 1983 claims.

In Heck v. Humphrey, the Supreme Court held that when a plaintiff's section 1983 damages claim necessarily implicates the constitutionality of the plaintiff's state conviction, imprisonment, or "other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," then the plaintiff must demonstrate that the conviction or sentence was overturned or

9

**Civil No. 14-1590 (GAG)**

invalidated in order to bring a 1983 damages claim.[3]  Heck, 512 U.S. at 486-87.  Put another way, Heck recognizes that a section 1983 damages claim cannot negate (or collaterally attack) an element of a state criminal conviction.  See id. at 486 (a civil tort action, such as a 1983 damages claim, is not an appropriate mechanism to challenge the validity of an outstanding criminal judgment).

Applying the Heck rule requires considering the relationship between a section 1983 damages claim and a state conviction or term of imprisonment.  The inquiry is highly fact-specific.  If the 1983 claim would negate an element of an underlying state conviction (and the conviction has not been overturned or invalidated), then the 1983 claim is noncognizable.  Thore v. Howe, 466 F.3d 173, 179-180 (1st Cir. 2006) (citations omitted).  If, on the other hand, the elements of a 1983 claim do not necessarily implicate the validity of a state conviction, then the 1983 claim may proceed.  Id.

Defendants argue that Fernández's "entire factual theory" is inconsistent with the juvenile proceedings and that Fernández is attempting to "maintain his innocence" as to the events of December 31, 2010.  (Docket No. 76, at 8-9.)  Fernández's section 1983 claims do not call into question the constitutionality of a state "conviction or imprisonment."  See Heck, 512 U.S. at 486.  Rather, Fernández's theory of relief is that, even despite the juvenile offenses he pled guilty to, damages are warranted because he (1) was shot in the back and (2) received inadequate care after being shot in the back.  (Docket No. 1.)  These section 1983 claims do not challenge the validity of Fernández's juvenile punishment and do not seek to relitigate Fernández's innocence.  See Heck, 512 U.S. at 486.

---

[3] Given that Heck refers to a state conviction or imprisonment, it is not readily apparent that Heck applies to state juvenile proceedings.  See, e.g., Simpson v. Thomas, 528 F.3d 685, 696 (9th Cir. 2008) (holding that "the results of [a prison] administrative proceeding fall short of the stricter Heck requirement that the claims asserted would 'necessarily imply' or 'demonstrate' the invalidity" of a prior conviction).  For the reasons discussed in this section, the Court need not answer that unresolved question.

Secondarily, Defendants argue <u>Heck</u> bars Fernández's section 1983 excessive force claim because proving excessive force would challenge "actions whose unlawfulness would render a conviction or sentence invalid." <u>Id.</u> Defendants derive this argument on footnote 6 of <u>Heck</u>, which provides an example of a section 1983 claim that, if successful, would undermine the validity of a plaintiff's criminal conviction. (<u>See</u> Docket No. 76, at 9.) The <u>Heck</u> footnote recognizes that an individual convicted of resisting arrest (i.e. "intentionally preventing a peace officer from effecting a *lawful* arrest") may not bring a 1983 damages claim premised on the unreasonableness of the arresting officer's search. <u>Heck</u>, 512 U.S. at 486 n.6. In this example, proving the 1983 claim would necessarily undermine the lawfulness of the arrest.

The <u>Heck</u> footnote does not apply here because the elements of Fernámdez's juvenile charges do not conflict with the elements of his section 1983 claims. <u>See</u> <u>Thore</u>, 466 F.3d at 179 (in considering the relationship between section 1983 and the conviction, the court must ask "whether the plaintiff could prevail only be 'negat[ing] an element of the offense of which he [was] convicted.'") (quoting <u>Heck</u>, 512 U.S. at 486, n.6). Fernández pled guilty to pointing a gun at Officer Ortiz *in concert with another person*. (<u>See</u> Docket No. 76 at 9.) No part of Fernández's juvenile proceedings suggested he was in possession of a weapon. Thus, if Fernández proves the force exercised by Ortiz was excessive, it would not undermine the constitutionality of Fernández's juvenile proceedings.

Defendants argue Fernández's guilty plea bars damages recovery because proving the 1983 claim would invalidate the firearms offense convictions. However, the firearms offense and the 1983 claims are not necessarily mutually exclusive. <u>See</u> <u>VanGilder v. Baker</u>, 435 F.3d 689, 692 (7th Cir. 2006) (declining to apply <u>Heck</u> to avoid the implication that "once a person resists law enforcement, he has invited the police to inflict any reaction or retribution they choose, while

forfeiting the right to sue for damages"). Fernández did not *personally* possess a weapon on December 31, 2010 and did not *personally* fire at police officers. (PSUMF ¶¶ 235-37; DRSUMF ¶¶ 235-37.) Accordingly, the facts of the juvenile offense, which was an accomplice charge, do not conflict with the facts supporting Fernández's 1983 claims. Since proving the 1983 claims would not even call the juvenile offense into question, much less invalidate the conviction, Heck does not bar Fernández's damages claims.

C. Excessive Use of Force under the Fourth Amendment

i. *Defendant Ortiz*

The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by the government. See U.S. CONST. amend. IV. Determining reasonableness of a seizure requires weighing "the individual's Fourth Amendment interests against the relevant government interests." Graham v. Connor, 490 U.S. 386, 395 (1989). To recover under section 1983 for a Fourth Amendment violation, a plaintiff must demonstrate that the force used by the defendant was objectively unreasonable given the totality of the relevant circumstances. See Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002).

Determining the reasonableness of the force used requires considering: (1) the severity of the crime; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. See Graham, 490 U.S. at 396. "Excessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." Cnty of Los Angeles v. Mendez, 581 U.S. -----, No. 16-369, 2017 WL 2322832, at *6 (May 30, 2017) (quoting Saucier v. Katz, 533 U.S. 194, 207 (2001)). The use of deadly force is constitutional only if an officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury

**Civil No. 14-1590 (GAG)**

to another. Tennessee v. Garner, 471 U.S. 1, 11 (1985) ("A police officer may not seize an unarmed, nondangerous person by shooting him dead.").

Fernández and Ortiz present starkly different versions of the events that led to Fernández's injury. Ortiz claims Rato, the individual in the blue shirt, fired first and Ortiz responded with proportional force in self-defense. (DSUMF ¶¶ 79-87.) Fernández, by contrast, claims he was shot in the back while laying down, unarmed. (PSUMF ¶¶ 231-34, 241-42.)

This factual dispute shows that Defendants have failed to carry their summary judgment burden. Fernández's deposition testimony is sufficient to create a genuine issue as to whether Ortiz's conduct was objectively unreasonable under the circumstances. Resolving this factual issue, which is the prerogative of the jury, will help determine the outcome of the excessive force claim against Ortiz. See Liberty Lobby, 477 U.S. at 248 (summary judgment must be denied when the resolution of a genuinely disputed factual issue could sway the outcome of a claim). Therefore, Defendant Ortiz's motion for summary judgment as to the excessive force claim is **DENIED**.

        *ii.    Defendant Galarza*

Plaintiffs' excessive force claim against Galarza arises from his failure to intervene, despite a reasonable opportunity to do so, before Ortiz used excessive force on Fernández. See Fernández Jorge, 124 F. Supp. 3d at 67 (declining to dismiss the excessive force claim against Galarza before an opportunity for discovery). It is undisputed that Galarza did not pursue Fernández into the woods and did not use any force against Fernández. (DSUMF ¶¶ 110, 113; PSUMF ¶¶ 110, 113.)

"'An officer who is present at the scene [of an arrest] and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance,' provided that he had a 'realistic opportunity' to prevent the other officer's actions.'" Martinez v. Colon, 54 F.3d 980, 985 (1st Cir. 1995) (quoting Gaudreault v. Municipality

of Salem, 923 F.2d 203, 207 n.3 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991)). In the context of a supervising police officer, a supervisor has a "heightened duty to intervene to prevent another officer from using excessive force." Burgos-Yantin v. Municipality of Juana Diaz, 669 F. Supp. 2d 191, 197 (D.P.R. 2009) (citing Herrera v. Davila, 272 F. Supp. 2d 154, 162 (D.P.R. 2003)).

Here, the undisputed facts show Galarza issued instructions for Ortiz and Lebron to pursue Fernández on foot.[4] (DSUMF ¶¶ 177; PSUMF ¶ 177.) Galarza knew Ortiz was in pursuit of Fernández before shots were fired. (DSUMF ¶¶ 105-09; PSUMF ¶¶ 105-09.) Galarza arrived at the scene sometime before Fernández was shot and apprehended. (DSUMF ¶¶ 110-11; PSUMF ¶¶ 111-12.) Between the time Galarza arrived and the time Fernández was shot, Galarza took no affirmative action. (DSUMF ¶ 113; PSUMF ¶ 113.)

Altogether, a jury must determine whether the facts and circumstances of the pursuit of Fernández afforded Galarza a reasonable opportunity to intervene to prevent the exercise of excessive force. See, e.g., Burgos-Yantin, 669 F. Supp. 2d at 197 (denying summary judgment on failure to intervene claim for supervising officer's nonfeasance in police shooting section 1983 claim); Miranda-Rivera v. Toledo-Davila, 813 F.3d 64, 73 (1st Cir. 2016) (reversing district court where factual issues precluded summary judgment on an excessive force claim against a PRPD sergeant who observed other officers using force, but did not intervene). Therefore, Defendant Galarza's motion for summary judgment on the excessive force claim is **DENIED**.

---

[4] Galarza says he instructed Ortiz and Lebrón to check the area *over the radio*. (DSUMF ¶ 177.) Ortiz says Galarza was *already at the scene* when Ortiz and Lebrón arrived. Id. ¶ 70. This disputed fact is material to the failure to intervene claim against Galarza because it bears on the amount time Galarza was present at the scene—with a reasonable opportunity to intervene—before the shooting.

### D. Failure to Intervene under the Fourteenth Amendment as to Galarza

Plaintiffs also claim Defendant Galarza failed to intervene to provide medical care after Fernández had been shot.

The Fourteenth Amendment's substantive due process protections require the government to provide medical care to persons injured while being apprehended by the police. City of Revere v. Mass Gen. Hosp., 463 U.S. 239, 244 (1983). Although the scope of the duty to provide medical care is not clearly defined, it is at least as great as the Eighth Amendment's protections for convicted prisoners. Miranda-Rivera, 813 F.3d at 74 (citing Gaudreault, 923 F.2d at 208). This means, at a minimum, an officer who displays "deliberate indifference" to an arrestee's "serious medical needs" may be held liable for denial of medical care. Id.

Here, a reasonable factfinder could conclude that Fernández's gunshot wounds constituted a serious medical need. See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (serious medical needs include obvious harms that a layperson would recognize as necessitating immediate medical attention). Further, a reasonable factfinder could find Galarza was deliberately indifferent to Fernández's serious medical needs during the hour that elapsed while officers carried him from the woods, loaded him into a pickup truck, and drove him to the hospital. See Coscia v. Town of Pembroke, 659 F.3d 37, 39 (1st Cir. 2011) ("a conscious failure to provide medical services" when reasonably appropriate can establish deliberate indifference).

In sum, Plaintiffs have established a genuine dispute of material fact as Defendant Galarza's failure to intervene based on the denial of medical care to Fernández. See Miranda-Rivera, 813 F.3d at 72-73, 75 (reversing district court grant of summary judgment on a claim based on the denial of medical care). Therefore, Defendant Galarza's motion for summary judgment on the failure to intervene claim is **DENIED**.

E. Supervisory Liability

Plaintiff's supervisory liability claim against Defendant Galarza arises from conduct at the scene after Fernández had been shot. The Court previously dismissed a second supervisory liability claim based on a failure to train theory. See Fernández-Jorge, 124 F. Supp. 2d at 69-71. Defendants do not raise new arguments in support of summary judgment on the remaining supervisory liability claim. (Docket No. 76, at 22-23.)

Section 1983 supervisory liability has two elements. First, plaintiff must establish a constitutional violation by one of the supervisor's subordinates. Guadalupe-Baez v. Pesquera, 819 F.3d 509, 514-15 (1st Cir. 2016) (citing Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008)). Second, plaintiff must show that the supervisor's act or omission was affirmatively linked to the subordinate's behavior in the form of "supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." Pineda, 533 F.3d at 54 (quoting Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir. 1988)).

These two elements ensure that "supervisors are not automatically liable for the misconduct of those under their command," Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000), because supervisory liability may not be based on the doctrine of *respondeat superior*. Ramirez-Lluveras, 759 F.3d at 19. Likewise, mere negligence alone is insufficient for supervisor liability to attach. Febus-Rodríguez v. Betancourt-Lebrón, 14 F.3d 87, 92 (1st Cir. 1994). Instead, the supervisor's action (or inaction), must demonstrate "reckless or callous indifference to the constitutional rights of others." Id.

Fernández's supervisory liability claim against Galarza is based on a theory of deliberate indifference. To establishing a supervisor's deliberate indifference, plaintiff must satisfy a three-part test. See Ramírez-Lluveras, 759 F.3d at 20. Plaintiff must show: (1) the supervisor had

**Civil No. 14-1590 (GAG)**

knowledge of the facts; (2) from which officials could draw the inference; (3) of a substantial risk of serious harm. Guadalupe-Baez, 819 F. 3d at 515 (citations omitted). In addition to deliberate indifference, a plaintiff must establish a "solid" causal link between the supervisor's conduct and the constitutional violation. Id. (citing Ramírez-Lluveras, 759 F.3d at 19). Causation requires showing "the supervisor's conduct led inexorably to the constitutional violation." Id. (quoting Hegarty v. Somerset Cnty, 53 F.3d 1367, 1380 (1st Cir. 1995)).

Fernández has established a genuine dispute of material fact as to Galarza's failure to supervise following the shooting based on both the timing and quality of care rendered following the shooting. Over an hour elapsed between the time he was shot in the woods and the time he was loaded into a pickup truck and driven to a nearby hospital. (PSUMF ¶ 92; see also Docket No. 76-8, at 17.) Galarza was present at the scene and on notice as these events unfolded. (DSUMF ¶¶ 110-13; PSUMF ¶¶ 110-13.) Fernández was carried out of the woods by officers after being shot in the back. (PSUMF ¶ 92.) The record is otherwise devoid of details as to the specific steps taken to render medical care to Fernández. No ambulance ever arrived. (DSUMF ¶ 128; PSUMF ¶ 128.) Instead, Fernández was transported on the bed of a pick-up truck, per Galarza's instruction.[5] (DSUMF ¶¶ 97, 130-31; PSUMF ¶¶ 97, 130-31.)

Fernández's deposition testimony, if credited by the factfinder, would allow a reasonable jury to conclude that a PRPD sergeant under the circumstances would have known the delay in rendering aid and the defects in quality of aid rendered carried a substantial risk of a constitutional violation. Accordingly, Defendant Galarza's motion for summary judgment on the supervisory liability claim is **DENIED**.

---

[5] Defendants offer conflicting accounts of the decision to transport Fernández in the truck bed. Ortiz claims it was his decision. (DSUMF ¶ 94.) Marte claims Galarza gave this instruction. Id. ¶ 130.

17

F. Qualified Immunity

Although the parties to not directly raise the issue, the Court must briefly address qualified immunity. Qualified immunity protects an official from personal liability for violations of a plaintiff's federally protected rights. Two questions are relevant: (1) whether plaintiff has shown facts to support the violation of a constitutional right; and (2) whether the right was "clearly established" at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (citations omitted).

Galarza and Ortiz are not entitled to qualified immunity on the first ground because there is sufficient evidence to support Fernández's claims of constitutional violation. If the jury credits Fernández's version of the facts, then a reasonable jury could conclude that the officers used more force than necessary and failed to render aid after Fernández had been shot. Nor are the defendants entitled to qualified immunity on the "clearly established" ground. Under the circumstances, a reasonable officer would have known that using more force than necessary and failing to render aid after the fact would have clearly violated Fernández's constitutional rights. See Miranda-Rivera, 813 F.3d at 72-73, 75 (no qualified immunity on claims of excessive force and denial of medical care for officers who beat and arrested an individual following a car chase). Therefore, Ortiz and Galarza are not shielded by qualified immunity.

G. Supplemental State Law Claims

Defendants seek summary judgment on Plaintiffs' Article 1802 and the Puerto Rico constitutional claims. Defendants assume the federal claims will be dismissed, and thus, the Court should decline supplemental jurisdiction. Plaintiffs' federal claims survive summary judgment, so the Article 1802 and Puerto Rico constitutional claims survive as well. Defendants' motion for summary judgment as to Plaintiffs' supplemental state law claims is **DENIED**.

IV. **Conclusion**

For the reasons set forth above, Defendants' motion for summary judgment at Docket No. 76 is **DENIED.**

**SO ORDERED.**

In San Juan, Puerto Rico this 12th day of June, 2017.

*/s Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge